# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PAUL GENSLEY, <br><br> Defendant. | No. 19-cr-86-CJW <br><br> **REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

_____

## *I.     INTRODUCTION*

This case is before me pursuant to Defendant's Motion to Withdraw Guilty Plea. (Doc. 52.) Defendant entered a guilty plea on December 2, 2019, to Conspiracy to Distribute a Controlled Substance in Count 1 of a three-count indictment. Defendant now asserts he is innocent of that charge and that he did not understand what he was pleading to.

The Honorable C.J. Williams, United States District Court Judge, referred this motion to me for a report and recommendation. On May 5, 2020, I held a hearing on Defendant's motion. Defendant declined to offer any evidence. The Government also offered no evidence.

For the reasons that follow, I respectfully recommend that the Court deny Defendant's motion to withdraw his guilty plea.

## *II.     FINDINGS OF FACT*

On July 30, 2019, a DEA Task Force Officer signed a Criminal Complaint before me alleging Defendant violated 21 U.S.C. Section 841(a)(1) by possessing methamphetamine with intent to distribute. (Doc. 2 in 19-MJ-263-MAR.) At his August 5, 2019 initial appearance, I appointed Assistant Federal Public Defender Jill Johnston

to represent Defendant. Following an August 8, 2019 detention and preliminary hearing, I ordered that Defendant be detained. (Doc. 13 in 19-MJ-263-MAR.)

On August 20, 2019, the grand jury returned a three-count indictment against Defendant charging him with one count of Conspiracy to Distribute a Controlled Substance and two counts of Possession with Intent to Distribute a Controlled Substance. (Doc. 2.)

At 11:00 a.m. on December 2, 2019, Defendant appeared before me and entered a plea of guilty. No transcript of that hearing has been ordered but I have reviewed the audio recording of the hearing. The plea hearing followed a course that is very familiar to this Court and the criminal bar that practices before it. At the beginning of the hearing, Defendant confirmed that he had the opportunity to discuss the charges in detail with Ms. Johnston and that he intended to plead guilty. I confirmed Defendant was agreeable to entering his plea before a United States Magistrate Judge. I placed Defendant under oath and made inquiries to ascertain whether there was reason to believe he was not competent. He appeared competent. I told him that it was important that he understood everything that happened and he confirmed he would stop me if he did not understand something that was said. I also invited him to visit privately with Ms. Johnston if he felt the need.

When I advised him of his constitutional rights, he confirmed he understood his right to counsel. When asked whether Defendant had been generally satisfied with Ms. Johnston's services he stated, "Generally, yes."

I discussed each element of the offense with Defendant. Because Defendant's alleged misunderstanding of the drug quantity is his principal basis for with drawing his plea, I will discuss that exchange in some detail. As per my standard practice, I relied on the written plea agreement and a Rule 11 letter submitted in advance of the plea

2

hearing to discuss the elements of the offense with Defendant. The Rule 11 letter had a minor typographical error:

> *Four*, that the agreement or understanding involved the distribution of 500 grams or more a [sic] mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine.

I have made the Rule 11 letter a part of the record by filing it as Court Exhibit 1. The plea agreement that Defendant signed states the same element of the offense without the typographical error:

> The agreement or understanding involved at least 500 grams or more *of* a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine.
> (Doc. 23 at 3 (emphasis added).) The forgoing is derived from the Eighth Circuit

Model Jury Instruction 6.21.846A.1 (*Apprendi*-Affected Conspiracy), which states:

> Four, describe aggravating element, e.g [the agreement or understanding involved 500 grams or more of a mixture or substance containing methamphetamine [and 5 kilograms or more of a mixture or substance containing cocaine]]).

Jud. Committee on Model Jury Instructions for the 8th Cir., Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (2017 ed.) (footnotes omitted).

The following is my transcription of the relevant discussion of this element during the plea hearing:

> **The Court:** Finally, the Government would have to prove that the agreement or understanding involved the distribution of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine. Do you understand the fourth thing the Government would have to prove?
> **Defendant:** And/or or both? I don't understand that part.
> **The Court:** This might be. . . .

3

**Defendant:** 500 grams and 50 grams or 50 grams?

**The Court:** I understand your confusion, I was going to ask Ms. Nydle about that. I think there might be a typographical error in the Rule 11 letter.

**Ms. Nydle:** Your honor, the Defendant technically only has to admit either the 500 grams or the 50 grams of actual. It can be the same. It can be part of the 50 grams of actual pure can be part of the 500 grams. So potentially depending on what the Defendant is comfortable admitting at this particular moment, I think we can do it as an "and" covering both or an "and/or," but we should be clear on the record which ones he is admitting to.

**The Court:** All right. Thank you for clarifying that. So, as I understand it, the Defendant can be convicted for this very count if the agreement or understanding involved the distribution of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and/or 50 grams or more of actual (pure) methamphetamine. Is that right, Ms. Nydle?

**Ms. Nydle:** Yes, Your Honor.

**The Court:** And Mr. Gensley, I take it you're uncomfortable this morning with admitting that it has both. Is that the case?

**Defendant:** So, it could be 550 then?

**The Court:** Well, it'd be 500 grams of a mixture or that mixture could also contain 50 grams of actual pure amphetamine.

**Defendant:** It can't be one or the other. Okay. Yes, then.

**The Court:** I don't mean to be slow about this, but I want to make sure that what you're saying yes to.

**Defendant:** I've seen none of it anyway, so. . . .

**The Court:** Well, the purpose of this hearing isn't for you to admit to things you don't agree to.

**Defendant:** Yes, Your Honor.

**The Court:** And if you have doubts about it and you want to either visit with Ms. Johnston or you don't want to proceed that's, as I've said, entirely your right. But I just want to make sure if you are going to be pleading to something here and what you're factually pleading to is accurate. That's all I'm trying to do here.

**Defendant:** Okay.

**The Court:** Do you want to discuss this with Ms. Johnston at this point?
Defendant: No.

**The Court:** Okay. I'm going to read it with "and" here and I take it you're in agreement with that.

**Defendant:** Okay.
**The Court:** The fourth thing the Government would have to prove is that the agreement and/or understanding involved the distribution of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine. Do you understand the fourth thing the Government would have to prove?
**Defendant:** Yes.
**The Court:** And is it true that the agreement or understanding involved the distribution of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine.
**Defendant:** Yes.

Thus, Defendant admitted he had committed each of the elements of the crime charged. I warned Defendant that if he pled guilty and the district court accepted his guilty plea, that he would have no right to withdraw that guilty plea even if he later changed his mind. He acknowledged his understanding of this limitation. Defendant denied that anyone had forced or pressured or threatened him in any way to get him to plead guilty. He affirmatively stated that his decision to plead guilty was a voluntary decision before he formally pleaded guilty.

During the change of plea hearing, I reviewed the plea agreement with the Defendant. Defendant confirmed that he had reviewed the plea agreement in its entirety before he signed it and that by signing it he intended to indicate that he understood and agreed to its terms.

With regard to the Stipulation of Facts, Defendant confirmed that he initialed each of the paragraphs to indicate that the information in those paragraphs was true and correct. As noted above, the facts as initialed by Defendant in the plea agreement state the "mixture or substance contain[ed] a detectable amount of methamphetamine *and* 50 grams or more of actual (pure) methamphetamine." (Doc. 23 at 3 (emphasis added.)

Defendant confirmed that Ms. Johnston had answered all of his questions about the plea agreement and that he had no more questions about it. Ms. Johnston confirmed, among other things, that she had full access the Government's discovery file and that it supported a factual basis for the guilty plea.

Defendant remained in custody after the plea hearing. On December 2, 2019, I filed my Report and Recommendation recommending the Court accept the guilty plea. (Doc. 22). On December 17, 2019, the Court accepted that recommendation, noting that neither party had objected. (Doc. 24.)

The United States Probation Office filed a Draft Presentence Investigation report on January 28, 2020. (Doc. 26.) Defendant filed an objection to this draft report on February 11, 2020. (Doc. 28.) While Defendant takes exception to a handful of facts reported, these exceptions in no way amount to a claim he was innocent of the charge to which he previously entered a guilty plea.

I need not recount the course of the forfeiture proceedings pending in this case, except to note that the flurry of pleadings from March through May of 2020 show substantial effort by Ms. Johnston on Defendant's behalf. This was likely the product of communications between Ms. Johnston and Defendant and, therefore, opportunities for Defendant to raise the issue of withdrawing his guilty plea.

On April 7, 2020, Defendant filed a pro se Motion to Discharge Counsel stating, among other things:

> I have been informed that my wife of 23 years plans on divorcing me wich [sic] means she will take possession of our house and everything we owned together. My lawyer had advised me that the best thing to do would plead guilty to the charges in my case saying I would risk a longer prison sentence if I was to try to fight my case. Now that I have lost everything that is important to me I have nothing else to lose.

6

(Doc. 49.)[1] I held a hearing on the Motion to Discharge Counsel on April 14, 2020. At that hearing, I determined that the relationship between Defendant and Ms. Johnston had not deteriorated to the extent that new counsel was necessary. They agreed they could and would work together going forward. Indeed, they appear to have worked together through the forfeiture proceedings and the instant motion.

### III. THE PARTIES' POSITIONS

In support of the instant motion, Defendant argues he "did not understand the full ramifications of his plea, including the nature of the offense to which he was admitting guilt, the statutory penalties, and the calculation of the sentencing guidelines. He asserts that his lack of full understanding renders his plea unknowing and/or involuntary." (Doc. 52.) At the May 5, 2020, hearing on the instant motion, Ms. Johnston argued that Defendant was somehow confused about the element of the offense that included the drug quantities. Defendant argues that part of the delay in filing the instant motion should not be counted against him. Ms. Johnston stated that Defendant was considering withdrawing his guilty plea in March, but was simultaneously seeking new counsel. This desire for new counsel was shown in Defendant's motion to discharge counsel. (Doc. 49.) The Government responds to this argument that even if this time is not counted against him in assessing the delay, there was still a substantial delay. Defendant also asserted that he did not understand the plea agreement.

The Government asserts that Defendant has not demonstrated a fair and just reason to permit him to withdraw his plea as required by Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. (Doc. 55 at 3.) The Government asserts that allegedly deficient performance by defense counsel is not a "fair and just" reason unless the

---

[1] This motion had been previously sealed from the Government. At the hearing, I inquired whether Defendant objected to unsealing it when Defendant relied upon it for the instant motion. Defendant had no objection to the Government reviewing Defendant's motion.

7

performance fell below an objective standard of reasonableness and Defendant was somehow prejudiced. Here, the Government contends, defense counsel's performance does not meet this test. The Government also argues that there is no basis to conclude Defendant was under some compulsion to plead guilty or that he misunderstood the penalties he faced under the sentencing guidelines.

The Government also points out that Defendant made no claim of innocence in his motion. In fact, only when I asked Ms. Johnston about Defendant's position on this issue did Defendant assert his innocence. The Government contends the motion was unduly delayed and that it would be prejudiced if Defendant were permitted to withdraw his plea.

## IV. ANALYSIS

"A Defendant has no absolute right to withdraw a guilty plea." *United States v. Nichols,* 986 F.2d 1199, 1201 (8th Cir. 1993). A district court may allow a Defendant to withdraw his guilty plea if he shows a "fair and just reason," Fed. R. Crim. P. 11(d)(2)(B), but a guilty plea should not "be set aside lightly." *United States v. Prior,* 107 F.3d 654, 657 (8th Cir. 1997). "'The defendant bears the burden of showing fair and just grounds for withdrawal.'" *United States v. Rollins,* 552 F.3d 739, 741 (8th Cir. 2009) (quoting *United States v. Mugan,* 441 F.3d 622, 630-31 (8th Cir. 2006)). "When a Defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" *United States v. Morrison,* 967 F.2d 264, 268 (8th Cir. 1992) (quoting *United States v. Rawlins,* 440 F.2d 1043, 1046 (8th Cir. 1971)).

> Even if such a fair and just reason exists, before granting the motion a court must consider "whether the Defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols,* 986 F.2d 1199, 1201 (8th Cir. 1993). Where the court sees no fair and just reason to permit withdrawal, however,

8

these additional matters need not be considered." *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005).

*United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006).

Defendant has not shown a fair and just reason to withdraw his guilty plea. In order to be constitutionally valid, "a guilty plea must be knowing, voluntary, and intelligent." *United States v. Martinez-Cruz,* 186 F.3d 1102, 1104 (8th Cir. 1999) (citation omitted). Federal Rule of Criminal Procedure 11 requires a court when taking a guilty plea to conduct a colloquy with the Defendant to ensure that the district court only accepts a knowing, voluntary, and intelligent guilty plea. Fed. R. Crim. P. 1l(b)(l)-(3) (requiring the court to advise the defendant of the rights he is giving up by pleading guilty, question the defendant regarding the voluntariness of his decision to plead guilty, and determine that a factual basis exists for the plea).

The "fair and just reason" Defendant has attempted to support is that he lacked understanding of the nature of the offense. At the hearing on the instant motion, Ms. Johnston pointed to my discussion with Defendant about the drug quantities as evidence that he lacked understanding of the nature of the offense. Defendant has not identified anything about the explanation of that element during the plea colloquy with which he now finds fault. Defendant does not point to any defect in the Stipulation of Facts on this issue. I find nothing in the explanation to be incorrect or confusing.

Nevertheless, it is possible for someone to be confused despite having heard a cogent explanation adapted to the meanest understanding. In this case, however, the record of the plea hearing contains Defendant's confirmation that he did, in fact, understand the nature of the offense, including the "aggravating elements;" i.e., the drug quantities. Defendant offered no evidence or even argument about the nature of his alleged confusion or why it would make any difference in this case. Defendant has not, for example, testified that he believed the Government had to prove there was 500

9

grams of a substance containing methamphetamine and 50 grams of pure methamphetamine *and* that he now has reason to believe the proof is insufficient. Nor has Defendant testified or offered evidence that he was, in fact, confused on any point.

At the May 5, 2020, hearing Defendant asserted for the first time that he did not understand the plea agreement. There was no evidence offered on this issue. Defendant's purported lack of understanding again related to proof of the drug quantities. However, Ms. Johnston explained that she had reviewed the plea agreement with Defendant, as she does with all of her clients, and that he asked her questions. She did not elaborate to indicate that those questions went unanswered or that Defendant somehow demonstrated a lack of understanding.

I find there is no evidence upon which to conclude that Defendant did not understand the elements of the offense either during the plea hearing or in reviewing the plea agreement with Ms. Johnston. On the contrary, all of the evidence points to his understanding. At the change of plea hearing, Defendant confirmed that he reviewed the plea agreement in its entirety with Ms. Johnston and that she answered all of his questions. Defendant also confirmed his understanding of the elements of the charge at the plea hearing. Before asking for his formal plea, Defendant confirmed that he had understood everything we had talked about and that he had no questions about it.

Another "fair and just" reason for withdrawing his plea asserted by Defendant is his alleged dissatisfaction with Ms. Johnston. The Eighth Circuit discussed this issue in *United States v. Norvell:*

> "Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." *United States v. McMullen*, 86 F.3d 135, 137 (8th Cir. 1996); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed.2d 203 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." (citing *Strickland v.*

10

> *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984))). To establish deficient performance, the defendant must show his counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052. To show prejudice, the defendant must establish that "he would have accepted the plea but for counsel's advice, and that had he done so he would have received a lesser sentence." *Wanatee v. Ault*, 259 F.3d 700, 704 (8th Cir. 2001); see *Lafler*, 132 S. Ct. at 1385.

729 F.3d 788, 795 (8th Cir. 2013). Defendant identifies nothing about Ms. Johnston's performance that was deficient or how he may have been prejudiced by it. Defendant's alleged dissatisfaction is insufficient. Moreover, his present position is contrary to his statement at the plea hearing that he was generally satisfied with Ms. Johnston.

The other alleged "fair and just" reasons to permit withdrawal of a guilty plea are wholly unsupported. Defendant offered no evidence or explanation for his contention that he did not understand the full ramifications of his plea, the statutory penalties, or the calculation of the sentencing guidelines. He points to nothing in the plea hearing colloquy that supports these contentions and I find there is none. On the contrary, the record of the hearing contains Defendant's confirmation that he understood the ramifications of the plea, the penalties he faces, and how the sentencing guidelines would be used in sentencing.

Defendant's proffered reasons for withdrawing his guilty plea are also belied by the statements in his request to discharge Ms. Johnston. (Doc. 49.) Defendant made no mention of his lack of understanding of anything associated with the plea. Rather, he explained that because of his impending divorce, he has nothing left to lose and is willing to risk a longer prison sentence. This change of heart is far from a fair and just reason for withdrawing a guilty plea. A change of heart regarding the wisdom of one's plea is an insufficient basis to permit its withdrawal. *United States v. Kemp*, 977 F.2d 586 at *1 (8th Cir. 1992) (unpublished table opinion). "[A] plea of guilty is a solemn

11

act not to be disregarded because of belated misgivings about [its] wisdom." *United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir. 1971).

Having concluded that there is no fair and just reason to permit Defendant to withdraw his plea, the Court's analysis could end. *United States v. Wojcik*, 60 F.3d 431, 434 (8th Cir. 1995); *United States v. Abdullah*, 947 F.2d 306, 311-12 (8th Cir. 1991). However, the Court may disagree with my conclusion on this issue. Therefore, I will analyze the remaining factors set forth in *United States v. Boone* that "are to be considered in determining whether to allow a pre-sentence motion to withdraw a plea":

> [1] whether defendant asserts his legal innocence of the charge; [2] the length of time between the guilty plea and the motion to withdraw; and [3] if the defendant established a fair and just reason for withdrawal, whether the government will be prejudiced.[2]

869 F.2d 1089, 1091–92 (8th Cir. 1989).

Upon my questioning, Ms. Johnston stated that Defendant contends he is actually innocent. This assertion appeared to be merely *pro forma*. Defendant offered no argument, much less evidence, to support this change in his position since the plea hearing. "An assertion of innocence-even a 'swift change of heart after the plea'-does not constitute a 'fair and just reason' to grant withdrawal." *Morrison,* 967 F.2d at 268 (quoting *United States v. Devins,* 646 F.2d 336, 337 (8th Cir. 1981)). Here, Defendant's change of heart was neither believable nor swift. Ms. Johnston reported that she first learned of the desire to withdraw Defendant's plea in March; i.e., approximately three months after his guilty plea. The first indication of Defendant's claim of innocence was at the May 5, 2020 hearing, more than five months after the guilty plea. *See., e.g., United States v. Vallery,* 108 F.3d 155, 158 (8th Cir. 1997)

---

[2] The first *Boone* factor is whether the defendant "established a fair and just reason to withdraw his plea." 869 F2d at 1091.

12

(holding the fact that over four months passed between the Defendant's guilty plea and his motion to withdraw his guilty plea supported the district court's decision to deny the motion); *Boone,* 869 F.2d 1092 (denying Defendant's motion to withdraw where Defendant did not assert his legal innocence and he waited two months before filing his motion to withdraw his guilty plea).

Moreover, Defendant's late claim of innocence is unpersuasive because it contradicts his admissions under oath at the change of plea hearing. *See United States v. Peebles,* 80 F.3d 278, 279 (8th Cir. 1996) (per curiam) ("Furthermore, we agree with the District Court that Peebles's claims of innocence are unavailing, given his admissions to the contrary in the plea agreement and stipulation, and at the change-of-plea hearing."). In this case, the claim of innocence is also contradicted by the absence of objections to the Presentence Investigation Report. While Defendant made some objections, the objections do not amount to a denial of the criminal conduct charged.

Defendant has not made any showing of actual innocence. A district court does not abuse its discretion where it does not allow a Defendant to withdraw his plea based on inherently unreliable allegations unsupported by specific facts. *See United States v. Haubrich,* 744 F.3d 554, 557 n.2 (8th Cir. 2014). A "mere assertion of innocence, absent a substantial supporting record, will not be sufficient to overturn a denial of a motion to withdraw." *United States v. Ludwig,* 972 F.2d 948, 951 (8th Cir. 1992) (quotation, alteration, and citation omitted). Defendant's claim of innocence is founded solely on a mere assertion of innocence, somewhat reluctantly proffered by Ms. Johnston and not founded on any evidence.

I also find the Government would be prejudiced were the Court to permit Defendant to withdraw his guilty plea. Defendant entered his guilty plea just two weeks prior to the scheduled trial. The Government points out that jurors had already been

13

Case 1:19-cr-00086-CJW-MAR   Document 64   Filed 05/12/20   Page 13 of 14

notified and witnesses had been served when Defendant chose to enter his plea. Having to redo this work would constitute some prejudice. "[A]llowing [a defendant] to withdraw his plea and forcing the government to prepare its case once again would prejudice the government." *United States v. Durham,* 178 F.3d 796, 799 (6th Cir. 1999). *See also United States v. Miell,* 711 F. Supp. 2d 967, 991 (N.D. Iowa 2010) (finding prejudice where the government would be required to prepare for trial a second time, (citing *Durham*, 178 F.3d at 799)). In addition, the Government, the Court, and the United States Probation Office have undertaken considerable efforts in reliance on Defendant's plea, including a lengthy forfeiture hearing and the preparation of a Presentence Investigation Report.

## V. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** Defendant's motion to withdraw his guilty plea. (Doc. 52.)

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 12th day of May, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa